*TAGGED OPINION*
*Do not publish*



**ORDERED in the Southern District of Florida on June 12, 2020.**

**Laurel M. Isicoff
Chief United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                    Case No. 12-37089- LMI

KENNETH SCHWARTZ and                      Chapter 7
VALERIE SCHWARTZ,

        Debtors.
_____/

## ORDER GRANTING IN PART MOTION FOR ORDER OF CIVIL CONTEMPT

THIS CAUSE came before the Court upon the *Motion for an Order of Civil Contempt by the Debtor Kenneth Schwartz* (ECF #212)(the "Contempt Motion")[1]

---

[1] The Court incorporates the following filings into its definition of Contempt Motion: *The Motion for an Order of Civil Contempt by the Debtor Kenneth Schwartz* (ECF #212); *Declaration by the Debtor Kenneth Schwartz in Support of the Motion for an Order of Civil Contempt* (ECF #213); and *Memorandum of Law by the Debtor Kenneth Schwartz in Support of the Motion For an Order of Civil Contempt* (ECF #214).

1

filed by the Debtor[2], the responses[3] thereto filed by Rajpattie Persaud and Kisson C. Persaud (collectively the "Persauds") and their attorney Robert Arena, and the *Reply* (ECF #248) filed by the Debtor.[4]  Pursuant to the *Notice of Filing by the Debtor Kenneth Schwartz, in Compliance with Order Dated February 18, 2020* (ECF #241), the parties agreed to proceed with the adjudication of the Contempt Motion based upon affidavits rather than an evidentiary hearing, which affidavits (and all attachments thereto) the Court has reviewed in their entirety.

Having considered the affidavits and applicable law, the Court finds that it is appropriate to grant the Contempt Motion in part.[5]

## **Facts**

The Debtor is an attorney who practiced law in New York.  The Debtor's law firm performed real estate closing services for the Persauds in connection with the Persauds' purchase of a home in December 2009.  The Persauds filed suit on January 15, 2012, against the Debtor, Kenneth B. Schwartz, P.C. (the Debtor's law firm), Bank of America, and other defendants in New York state

---

[2] Valerie Schwartz was a co-debtor in this bankruptcy case, however none of the subject matter in this Order relates to her, accordingly all references to the "Debtor" shall mean only Kenneth Schwartz.

[3] The *Affidavits* (ECF ##226 and 227) filed by the Persauds, the *Affirmation in Opposition to Motion by Debtor Kenneth Schwartz* (ECF #228) filed by Mr. Arena, and the *Supplemental Affidavit Opposition* (ECF #247) filed by Mr. Arena.

[4] The Contempt Motion also originally sought relief against Bank of America, but the Debtor subsequently withdrew any claim for relief against Bank of America. (ECF #224)

[5] The following constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, made applicable to this contested matter pursuant to Fed.R.Bankr.P. 9014(c) and Fed.R. Bankr. P. 7052.

court (the "NY Civil Case") for fraud, legal malpractice, and conversion connected to that closing.

The Debtor filed bankruptcy on November 9, 2012. The Debtor's bankruptcy stayed the NY Civil Case before any significant discovery began. On October 23, 2013, the Court entered its *Order Granting Limited Relief Upon Bank Of America's Motion For Relief From The Automatic Stay* (ECF #143) (the "Stay Relief Order"), which granted limited stay relief (1) allowing Bank of America to proceed in the NY Civil Case to liquidate its claims against the Debtor, (2) which required Bank of America to come back to bankruptcy court after liquidating its claims before Bank of America would be permitted to execute on any judgment against any insurance proceeds[6], and (3) prohibited any execution against the Debtor personally. The Persauds and Mr. Arena were not party to *Bank of America's Motion for Relief from the Automatic Stay* (ECF #121) (the "Stay Relief Motion") and never filed their own motion for stay relief in the bankruptcy proceeding, nor did they file an adversary proceeding seeking nondischargeability of debt pursuant to 11 U.S.C. §523 or objecting to the Debtor's discharge pursuant to 11 U.S.C. §727. The Debtor received a discharge on October 25, 2013, pursuant to the Court's *Discharge of Debtor* (ECF #144) (the "Discharge Order").

On March 4, 2014, the Debtor was indicted in New York (the "NY Criminal Case") for alleged bad acts related to the real estate closing with the Persauds.

---

[6] A federal court ultimately determined that the Debtor's insurance policy did not cover the claims raised in the NY Civil Case. *See* n. 15 infra.

On January 26, 2015 the court in the NY Civil Case issued an order staying the NY Civil Case until the resolution of the NY Criminal Case (the "Order Staying").[7] Apparently the Persauds and Mr. Arena filed a motion in the NY Civil Case requesting the New York state court lift the bankruptcy stay (the "State Court Stay Motion"). The Order Staying states, "by order dated October 23, 2013, the United States Bankruptcy Court for the Southern District of Florida granted defendant BANA's motion for relief from the stay and modified the stay so that this case could proceed as to claims against defendant Schwartz. Accordingly, that portion of plaintiff's motion to lift stay imposed by the bankruptcy action filed by defendant Kenneth B. Schwartz, Esq. is denied as moot." Order Staying, p. 4. (emphasis added).

The Debtor ultimately pled guilty to criminal facilitation on January 13, 2017, in the NY Criminal Case. As part of the plea agreement, the Debtor agreed to a confession of judgment in the amount of $86,061.00 in favor of the Persauds.

After the NY Criminal Case was concluded, the Persauds filed a motion in the NY Civil Case seeking relief from the stay the state court had imposed pending resolution of the NY Criminal Case. On January 2, 2018, the state court judge granted the motion in part (the "Summary Judgment Order"), which (1) granted the Persauds' and Mr. Arena's request to lift the stay imposed due to the NY Criminal Case and compel discovery from the Debtor, (2) denied the Debtor's request for leave to amend his answer to include his bankruptcy discharge as an

---

[7] The Order Staying only stayed the NY Civil Case on the basis of the pending NY Criminal Case and not the bankruptcy case.

4

affirmative defense, and (3) granted summary judgment in favor of the Persauds as to liability of the Debtor for fraud and misappropriation of funds.

The Debtor has moved for civil contempt against the Persauds and their attorney, Mr. Arena, for violating the Discharge Order. The Debtor argues that the continuation of the NY Civil Case by the Persauds and Mr. Arena prior to the entry of the Discharge Order was impermissible because they never obtained stay relief to continue the NY Civil Case as to the Debtor, and that any actions taken after the entry of the Discharge Order were a violation of the discharge injunction pursuant to 11 U.S.C. §524.

The Debtor requests damages against Persauds and Mr. Arena for (1) the attorney's fees the Debtor incurred to defend himself in the NY Civil Case, (2) attorney's fees for drafting the moving papers related to this Contempt Motion, and (3) compensatory damages arising from the re-opening of the bankruptcy case, which reopening, the Debtor alleges, has negatively impacted his credit report.

In response, the Persauds and Mr. Arena argue that they did not knowingly violate the automatic stay or the Discharge Order and take the position that there was no stay in effect because this Court entered the Stay Relief Order and the Order Staying said the Stay Relief Order applied to all actions against the Debtor in the NY Civil Case. The Persauds and Mr. Arena argue further that they should not be required to pay for the Debtor's attorney's fees related to defending the NY Civil Case because the Debtor would have incurred those fees in any

5

event, litigating with Bank of America and defending his law firm, Kenneth B. Schwartz, P.C., which entity was not in bankruptcy.

## Legal Analysis

The Court will first turn to the issue of whether the actions taken by the Persauds and Mr. Arena are violations of the Debtor's bankruptcy discharge. [8]

The bankruptcy discharge is a statutory injunction.

> (a)  A discharge in a case under this title—
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228,  or 1328 of  this  title, whether or not discharge of such debt is waived;
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

11 U.S.C. §524(a).  A violation of the discharge injunction may give rise to civil contempt sanctions, which a bankruptcy court may impose pursuant to its authority under section 105 of the Bankruptcy Code.  *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801 (2019).  In *Taggert,* the United States Supreme Court held that sections 524 and 105 of the Bankruptcy Code "authorize[ ] a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id.*

---

[8] The parties are in agreement that the Contempt Motion does not relate to the confession of judgment arising from the NY Criminal Case.  Accordingly, the Court need not address any of the arguments raised in any of the moving papers regarding the characterization of that obligation as "restitution".

There is no dispute that the Persauds and Mr. Arena knew about the Debtor's bankruptcy and subsequent discharge. The Persauds and Mr. Arena argue that the stay was no longer in effect at the time that they continued to prosecute the claims in the NY Civil Case because the stay "was lifted to allow Bank of America *and all parties including the [Persauds]* to ascertain the percentage of liability against all the remaining co-defendants of the civil action." ECF #228, p.8. (emphasis added). They further argue that because the Summary Judgment Order ruled only as to liability and did not direct the Debtor to pay any damages, their actions did not violate the bankruptcy discharge. To support their position that they did not intend to violate the discharge injunction, the Persauds and Mr. Arena note that they recently executed a *Stipulation of Discontinuance* in the NY Civil Case against the Debtor to show that they are not trying to collect against him personally on any liability coming out of that case.[9]

Mr. Arena asserts[10] that he was allowed to resume litigating the NY Civil Case against the Debtor personally because the judge in the NY Civil Case said the bankruptcy stay was moot. The law is clear, while bankruptcy courts and non-bankruptcy courts have concurrent jurisdiction to decide whether a matter is stayed by the filing of a bankruptcy case, the bankruptcy court has exclusive jurisdiction to grant stay relief. If a non-bankruptcy court is incorrect in its decision about the stay, all action taken in reliance on that decision is VOID.[11]

---

[9] The Debtor states that even though the stipulation is signed, the Persauds and Mr. Arena have not filed it in the NY Civil Case.

[10] *Supplemental Affidavit in Opposition*, ECF #247, p.3.

[11] In *In re Shrum*, 597 B.R. 845, 853-854 (Bankr.E.D.Mi. 2019), the court explained that

7

Mr. Arena's mistaken belief that he could request that relief from the state court is objectively unreasonable.[12] Moreover, once the Debtor received his discharge the issue of stay relief became moot; irrespective of whether a creditor gets stay relief, unless the claim being pursued is *not* discharged, any continuation of efforts against a debtor personally after the discharge is a violation of the discharge injunction.

There is no question that continuation of any claims against the Debtor in the NY Civil Case is a violation of the discharge injunction. Moreover, the commencement or continuation of any action of the claim arising from the facts surrounding the closing that is the subject of the disputes between the Debtor and the Persauds is a violation of the discharge injunction other than actions

---

"[t]he court in which the judicial proceeding is pending ... has jurisdiction to decide whether the proceeding is subject to the stay." *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012) (citing *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986)). However, there was a risk in the State Court doing so. This is because, "when the stay would otherwise apply, bankruptcy courts have the exclusive jurisdiction to grant relief from the stay." *Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 571-72 (6th Cir. BAP 2019) (holding that an ex-spouse and her attorney violated the stay by proceeding with a sentencing hearing for contempt against the debtor when he failed to pay a dischargeable money judgment") (*citing Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir. 1983)). "If the non-bankruptcy court's initial jurisdictional determination is erroneous, **the parties run the risk that the entire action later will be declared void ab initio**." *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir. 2001) (citations omitted). "**If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative ....**" *Id.* (citation omitted). In other words, if the state court wrongly decides that the stay does not apply and continues with a proceeding against the debtor, it has effectively granted relief from the stay, intruding on the exclusive jurisdiction of the bankruptcy court. (emphasis added).

[12] The state court was ultimately right for the wrong reason. The automatic stay was no longer in effect in January of 2015 when the Order Staying was entered and so the motion for relief from stay was moot; the stay was no longer in effect after the Court issued the Discharge Order on October 25, 2013, 11 U.S.C. §362(c)(2)(C). What took the place of the automatic stay was the discharge injunction.

solely relating to collection of the confession of judgment entered in the NY Criminal Case.

Because there is no question that Mr. Arena and the Persauds violated the discharge injunction, the Court must determine whether they are liable for civil contempt. And if so, what sanctions is the Debtor entitled to. A creditor may be held in civil contempt for violating a discharge order if there is not a fair ground of doubt as to whether the order barred the creditor's conduct. *Taggert v. Lorenzen*, 139 S.Ct. at 1804. "Under the fair ground of doubt standard, civil contempt . . . may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802.

While the Persauds and Mr. Arena argue that the Debtor did not raise the Discharge Order until he filed the Contempt Motion, this is not accurate. The Debtor *did* raise this issue more than two years ago, when, prior to January 2, 2018, the Debtor attempted to amend his affirmative defenses in the NY Civil Case to include his bankruptcy discharge as a defense.[13] Mr. Arena's argument that he thought he was not doing anything wrong because the state court judge said the request for bankruptcy stay relief was moot does not help his cause. Mr. Arena is an attorney; he is obviously an attorney who knows very little about bankruptcy. Under the rules governing professional conduct Mr. Arena had an obligation to educate himself enough about bankruptcy to protect his clients'

---

[13] *See* the Summary Judgment Order, p. 8.

9

interests. That might have involved something as minor as reaching out to any bankruptcy attorney he knew or could find[14], which attorney would have immediately advised Mr. Arena that (1) he can't ask a non-bankruptcy court for stay relief and (2) that he was violating the discharge injunction. Mr. Arena clearly did neither. In *Taggart,* the Supreme Court rejected a contempt standard based on "subjective good faith".

Based upon the standard articulated in *Taggart,* the Court finds that there is no fair ground of doubt that the Discharge Order barred the conduct of the Persauds and Mr. Arena and the violation was based on an objectively unreasonable understanding of the discharge injunction. Accordingly, the Debtor is entitled to damages for civil contempt.

### **Damages**

The Debtor seeks damages for (1) attorneys' fees in the NY Civil Case, (2) attorneys' fees related to the filing of the Contempt Motion and related reply, and (3) compensatory damages for re-opening the bankruptcy case, which the Debtor alleges has negatively impacted his credit report. The Persauds and Mr. Arena, in turn, request attorneys' fees in the amount of $7,500.00 for their response to the Contempt Motion, which motion they argue is frivolous.

The Persauds and Mr. Arena argue that the Contempt Motion should be barred by the doctrine of laches because the Debtor failed to raise violation of the discharge injunction until approximately six years after entry of the Discharge Order came into effect. However, there was no reason for the Debtor

---

[14] There are many bankruptcy attorneys in New York City.

to raise the discharge injunction until the state court lifted its stay of the NY Civil Case, and the Debtor *did* raise the discharge as an affirmative defense at that time. Therefore, to the extent that there is a laches defense to raising a bankruptcy discharge, there is no basis to do so here.

In support of his request for the attorney's fees in the NY Civil Case, the Debtor submitted an *Affirmation By Lisa Rolle, Attorney, on Behalf of Traub, Lieberman, Straus & Shrewsberry LLP* (ECF # 250) (the "Legal Fee Affidavit") that states that the legal fees owed by the Debtor in the NY Civil Case totaled $60,419.43.  Ms. Rolle states that her firm was assigned as counsel to the Debtor in the NY Civil Case under an insurance policy with First Mercury Insurance Company.  The Debtor is now responsible for all of the legal fees that previously were paid by the insurance company on his and his law firm's behalf.[15]

The Persauds and Mr. Arena argue that they should not be responsible for the Debtor's attorneys' fees in connection with the NY Civil Case because the fees include all the fees paid in the NY Civil Case, including fees incurred prior to the bankruptcy petition, and after Bank of America had stay relief to proceed. Moreover, they argue, the Debtor would have incurred those expenses irrespective of any discharge violation because the Debtor's law firm, Kenneth B.

---

[15] The Debtor's insurance carrier, First Mercury Insurance Company, filed a declaratory action in the United States District Court for the Eastern District of New York (the "NY Federal Case") to determine whether the policy covered the claims raised in the NY Civil Case against the Debtor and his law firm. The United States District Court entered a Summary Judgment Order on December 5, 2019, that the insurance company "has no duty under the subject Policy to defend or indemnify defendants Law Office of Kenneth B. Schwartz, Kenneth B. Schwartz, P.C., and Kenneth B. Schwartz (collectively "the Schwartz Defendants") from any claims, liabilities, causes of action, or damages which are the subject of the … Persaud Action". *See* ECF #256, pp. 3-4.

11

Schwartz, P.C., is a named defendant in the NY Civil Case and also was being defended by Ms. Rolle and her firm.

The Legal Fee Affidavit does not distinguish between fees accrued for the defense of the Debtor as compared to his law firm[16]. The Debtor has not filed anything that would support this Court finding that any of those fees arose solely in connection with defending him, individually, as opposed to both him and his law firm. Nor has the Debtor shown how fees incurred prior to the Discharge Order caused damage arising from violation of the discharge injunction[17]. Therefore, the Debtor has not demonstrated that his obligation to repay Mercury Insurance the attorney fees from the NY Civil Case constitutes damages as a direct result of a violation of the discharge injunction. The Debtor's request for attorney's fees in the NY Civil Case is DENIED.

The Debtor next requests attorney's fees for twenty (20) hours of his time spent drafting the Contempt Motion and all of the related filings. The Persauds and Mr. Arena argue that the Court should not award attorney's fees as damages against them because the Debtor never requested that they discontinue the NY Civil Action and instead waited to file and serve the Contempt Motion until after the Court in the NY Federal Case issued its insurance coverage ruling, and did so without the requisite warnings required by Fed.R.Bankr.P. 9011(c). However,

---

[16] The Debtor and Kenneth B. Schwartz, P.C. were named defendants in the NY Civil Case. It is not clear why the Summary Judgment Order in the NY Federal Case references the Law Office of Kenneth B. Schwartz as a second law firm entity belonging to the Debtor.

[17] Moreover, based on the timing of the Stay Court Stay Motion, it does not appear that the Persauds and Mr. Arena were litigating with the Debtor personally prior to entry of the Discharge Order.

12

the Persauds and Mr. Arena confuse the requirements of Rule 9011 with the remedies available to a debtor for violation of the discharge injunction. One has nothing to do with the other. Sanctions awarded under section 105 have no precondition. The conditions precedent to sanctions for a discharge violation are described in the *Taggart* opinion, and the Court has already found those conditions precedent have been met. Accordingly, that argument is overruled.

Reasonable attorney's fees may be awarded as damages for a discharge violation. *See e.g. Nibbelink v. Wells Fargo Bank, N.A. (In re Nibbelink),* 403 B.R. 113 (Bankr.M.D.Fla. 2009). The Debtor will have fourteen (14) days from the entry of this Order to submit detailed time records showing all costs and fees associated with the prosecution of the Contempt Motion. The Persauds and Mr. Arena will have fourteen (14) days to either object to the requested fees and costs (but only on the basis of reasonableness, not allowance) or pay the requested fees. If the Persauds and Mr. Arena file an objection, the Court will review the fees and determine what amounts should be awarded to the Debtor in connection with the Contempt Motion.

The Debtor also requests an award of compensatory damages for reopening this bankruptcy case, which, the Debtor alleges, has negatively impacted his credit report. The Court entered the *Final Decree* (ECF #211) and closed this case on February 13, 2018. The Debtor had to reopen this case in order to file the Contempt Motion. However, the Debtor has not demonstrated that he suffered any actual damages arising from the reopening of the case and the resulting impact in his credit report. Accordingly, the Debtor's request for

compensatory damages related to the reopening of this bankruptcy case is DENIED.

The Court finds that the Persauds and Mr. Arena should be jointly and severally liable for any damages ultimately awarded to the Debtor. "A creditor and its attorney are jointly and severally liable for their violations of the discharge injunction because under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts." *Vazquez v. Sears, Roebuck & Co. (In re Vazquez)*, 221 B.R. 222, 231 (Bankr.N.D.Ill. 1998). As summarized by the court in *Vazquez*, there are many examples of when a court finds a creditor and its attorney liable for discharge violations.

> *In re Borowski*, 216 B.R. 922, 925 (Bankr.E.D.Mich.1998) (former client and client's counsel violated the discharge injunction and the debtor is entitled to actual damages upon showing of documentation); *Braun v. Champion Credit Union (In re Braun)*, 141 B.R. 133 (Bankr.N.D.Ohio 1992), amendment denied, 141 B.R. 144 (Bankr.N.D.Ohio 1992), aff'd in part, remanded in part, 152 B.R. 466 (N.D.Ohio 1993) (defendant and defendant's counsel sanctioned $15,000.00 as punitive damages; on appeal, court agreed defendant was in contempt but remanded the case for proper determination of the exact amounts); *In re Simonetti*, 117 B.R. 708 (Bankr.M.D.Fla.1990) (mortgage holder and its counsel found in contempt and liable for damages by seeking a deficiency judgment in state court on the discharged mortgage liability).

*Id.* at 231. *See also In re Plummer*, 513 B.R. 135 (Bankr.M.D.Fla. 2014)(holding creditor and his attorney jointly and severally liable for violating discharge injunction by pursuing mortgage foreclosure action).

Mr. Arena's actions on behalf of the Persauds lacked any basis in law, and, as mentioned *supra*, had Mr. Arena bothered to take the time to consult the

14

Bankruptcy Code or a bankruptcy attorney, he would have known that. The Persauds are responsible for Mr. Arena's actions as their agent. Consequently, the Persauds and Mr. Arena shall be jointly and severally liable for any attorney's fees awarded by the Court.

Because the Court has ruled that Mr. Arena and the Persauds violated the discharge injunction, the Debtor's filing of the Contempt Motion was not frivolous. Therefore, the Persauds and Mr. Arena are not entitled to attorney's fees.

Accordingly, it is ORDERED and ADJUDGED as follows:

1. The Contempt Motion is GRANTED in part.
2. The Debtor will have fourteen (14) days from the entry of this Order to submit detailed time records showing all costs and fees associated with the prosecution of the Contempt Motion.  The Persauds and Mr. Arena will have fourteen (14) days to either object to the requested fees and costs (but only on the basis of reasonableness, not allowance) or pay the requested fees.
3. The Persauds' and Mr. Arena's request for Attorney's fees is DENIED.

###

*The Clerk of Court shall serve a copy of this Order on all parties in interest.*